FILED

05/28/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0476

DA 22-0476

## IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 114

STATE OF MONTANA,

     Plaintiff and Appellee,

  v.

NELDIA MARIE PUCCINELLI,

     Defendant and Appellant.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DC-11-90
Honorable Howard F. Recht, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

        Chad Wright, Appellate Defender, Charlotte Lawson, Assistant Appellate
Defender, Helena, Montana

     For Appellee:

        Austin Knudsen, Montana Attorney General, Bjorn E. Boyer, Assistant
Attorney General, Helena, Montana

        Bill Fulbright, Ravalli County Attorney, David Lakin, Deputy County
Attorney, Hamilton, Montana

Submitted on Briefs:  May 1, 2024

Decided:  May 28, 2024

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Appellant Neldia Marie Puccinelli (Neldia) appeals from the August 25, 2022 Judgment on Revocation of Suspended Sentence issued by the Twenty-First Judicial District Court, Ravalli County. Neldia asserts the District Court erred when it determined she had not made a good faith effort to pay court-ordered restitution and revoked her suspended sentence, when it failed to waive or modify her restitution, and when it failed to give her credit for elapsed time against the new sentence imposed. Contrarily, the State asserts the District Court made no error.

¶2 We restate the issue on appeal as follows:

> *Whether the District Court abused its discretion when it revoked Appellant's suspended sentence based on her alleged failure to pay full restitution.*

We reverse and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Neldia worked for ProMark in Florence from 2006-09. Her employment was terminated when it was discovered she had taken funds from the company through payroll and company checks and also had inappropriately used the company credit/debit card for personal expenditures. ProMark filed a civil suit—*ProMark, Inc. v. Neldia Puccinelli*, No. DV 09-328, Twenty-First Judicial District Court, Ravalli County—against Neldia seeking damages in the amount taken by Neldia from ProMark together with costs of suit and other relief the court deems just and proper. On December 9, 2009, Neldia and ProMark entered into a Settlement Agreement "to fully, finally and forever settle and resolve all claims for relief, causes of action, claims for injuries and damages, and any other issues or matters

2

related to or stemming from the facts, circumstances and allegations that form the basis for this lawsuit[.]" Pursuant to the Settlement Agreement, Neldia was to transfer to ProMark all right, title and interest to specific items of personal property listed in the agreement and then make 84 monthly payments of $350 to ProMark commencing May 5, 2010. Neldia transferred all the items of personal property delineated in the Settlement Agreement to ProMark, commenced making the $350 per month payments on May 5, 2010, and continued to make monthly payments thereafter. On January 4, 2010, the civil case was dismissed as fully settled with prejudice.

¶4    Nineteen months after the civil case was dismissed as settled, on August 9, 2011, the State filed an Information charging Neldia with three counts of theft by embezzlement totaling approximately $30,000—alleging in Count 1 that she diverted approximately $18,000 from ProMark to her personal accounts through the company's payroll, in Count 2 that she diverted approximately $6,400 from ProMark to her personal accounts through the company's checks, and in Count 3 that she diverted approximately $5,600 from ProMark to her personal accounts through the company's credit/debit card. At the time the criminal case was filed, Neldia had transferred all of the personal property set forth in the Settlement Agreement to ProMark and had consistently made monthly payments of $350 to ProMark—totaling $5,250.

¶5    On April 4, 2012, Neldia entered into a Plea Agreement with the State. That agreement provided the State would file an Amended Information consolidating the previously filed three counts into one count of theft by embezzlement and Neldia would

3

then enter a guilty or no contest plea to the charge. The parties would jointly recommend the court impose a fully suspended DOC commitment and "that the [c]ourt set the amount of restitution consistent with the Settlement Agreement entered into in *Promark, Inc v. Neldia Puccinelli*, Cause No DV-09-328, filed in this [c]ourt, payable as required in that agreement" and further "to be paid by laws of civil agreement." On April 4, 2012, the State filed an Amended Information charging Neldia with one count of theft by embezzlement alleging Neldia diverted "more than $30,000.00 of her employer's funds to her personal accounts by use of the company's payroll, checks and credit/debit cards[.]" Neldia then entered a guilty plea to the single charge in the Amended Information.

¶6     On June 6, 2012, Neldia appeared for sentencing. Both parties recommended the court impose a fully suspended DOC commitment to provide Neldia time to pay restitution. At that time, Neldia was current on her monthly restitution payments of $350 and had already paid $9,100 to ProMark toward the $29,400 to be paid pursuant to the Settlement Agreement. Despite this, the original sentencing court speculated, "the [c]ourt has a strong suspicion that the Defendant will stop paying restitution if given a probationary sentence as recommended by the parties" and that upon her doing so, the court would not be able to revoke her probationary sentence for nonpayment as her only source of income was from Social Security disability. Based on this speculation, the court rejected the plea agreement and imposed a 10-year commitment to the Montana Women's Prison, with 5 years suspended and Neldia was taken into custody. As Neldia's sole source of income, her Social Security disability payments, ceased during her incarceration, this sentence virtually

4

guaranteed Neldia would not be able to continue to make the $350 per month restitution payments she had consistently been making. The court also ordered Neldia to pay $67,235—over $37,000 more than the loss claimed in the Amended Information and the amount settled for in the civil action—in restitution and ordered that she "continue to make monthly restitution payments until [she] has paid full restitution, even after incarceration or supervision has ended[.]"

¶7 While incarcerated, Neldia's disability payments were suspended and her financial situation deteriorated. Her husband, a disabled veteran, was left to pay all the household expenses, including their mortgage, without any financial assistance from Neldia. Neldia was paroled on July 31, 2014, and discharged her prison sentence and began serving the suspended portion of her sentence on May 13, 2017. During her incarceration, the DOC took a portion of her inmate account and applied it towards restitution. Upon release, Neldia resumed making regular payments towards restitution, albeit not at the level she previously had as Neldia and her husband struggled to regain financial stability related to her suspension of income while incarcerated.

¶8 Upon her release, Probation & Parole (P & P) did not review Neldia's financial condition with her and did not set or recommend any particular monthly restitution amount. Neldia submitted monthly payments and P & P accepted those payments. At no time prior to P & P seeking revocation was Neldia cautioned or warned that her restitution payments were insufficient, that P & P considered her to be in violation of the conditions of her probation, or that she could face revocation for failing to pay more in restitution. While P

5

& P is required to utilize the Montana incentives and interventions grid (MIIG) to guide responses to negative behavior by individuals under supervision, "including responses to violations of supervision conditions, in a swift, certain, and proportional manner," § 46-23-1028(1), MCA, no response was made by Neldia's probation officer under the MIIG and no assistance was provided to Neldia during her probation with regard to her financial condition and appropriate management thereof to meet P & P's expectations of her with regard to restitution.

¶9 On January 14, 2022, five months before Neldia was set to discharge her probation, the State filed a Petition for Revocation of Suspended Sentence report of violation alleging Neldia violated the restitution conditions of her sentence. The Affidavit in Support of petition for Revocation of Order Suspending asserted a "Compliance Violation" and provided a "Brief summary" of the violation:

> This is a unique situation where no intervention was appropriate.
>
> The Defendant has had no violations of her [c]ourt conditions during her time on supervision, either as a parolee, or a probationer, other than failing to pay the balance of her restitution. She has never failed a drug or alcohol test and reports reliably for supervision. She is retired and has some ongoing health issues.

Her supervising officer further recommended that DOC supervision "is of little purpose at this point."

¶10 On January 27, 2022, the District Court ordered the Office of Public Defender to assign Neldia counsel. On February 3, 2022, Neldia's counsel noticed her appearance and filed a request for discovery. On March 16, 2022, Neldia filed a motion for modification

6

of restitution pursuant to § 46-18-246, MCA.  In this motion, Neldia sought reduction or, alternatively, waiver of the remaining balance of her restitution.  She asserted that, at the time of sentencing, the State inaccurately presented to the court that $67,234.63 was still owing in restitution and further she had not received credit for the $9,100 she had paid prior to that time nor had she received credit for the value of the personal property she previously transferred to ProMark pursuant to the Settlement Agreement.  She noted that since sentencing she had made nearly another $8,000 in restitution payments.  She further averred she was 69 years old, in poor health, and had no substantial assets such that it would be just for the court to waive the remaining restitution.

¶11    On May 3, 2022, the court held an adjudication hearing.  At the outset of the hearing, Neldia's counsel reminded the court of Neldia's outstanding motion to modify or waive the restitution.  The court agreed Neldia should present all of her evidence regarding her motion at the same time as the adjudicatory hearing, reasoning that if the court concluded there was no violation, there was no disposition to worry about, and otherwise the evidence would be available for consideration.  At the adjudicatory hearing, Neldia's probation officer, Nate Martin, testified, "[h]er supervision has been without trouble.  I mean, the only note I found was a missed appointment in 2014.  Otherwise, her super -- she's always on time.  She's made regular payments.  She appears and answers questions, and her home visits have been without issue."  He acknowledged that throughout her entire probationary time Neldia had made consistent, monthly payments towards restitution and that she had "[a]bsolutely" been an "exemplary probationer" prompting him to comment, "[t]hat's

7

remarkable, from my perspective." He acknowledged DOC had not credited Neldia with any of the payments she made to ProMark prior to her sentencing. He admitted that although he was required to make sure she made regular payments to her ability, he had never asked her for financial documents or discussed her financial situation with her other than discussing "her restitution fairly early on in her supervision and that it was unlikely that at the rate she was paying it that she would have it paid off by the time her supervision ended."

¶12 Merritt Rogers, who previously owned ProMark with her late husband, testified at the adjudication hearing. She acknowledged that ProMark sued Neldia civilly and entered into a Settlement Agreement. Although she had some quibble with the value of the personal property Neldia transferred to ProMark, she acknowledged signing the Settlement Agreement and the items of personal property set forth in the Settlement Agreement had been transferred from Neldia to ProMark. Further, she generally confirmed Neldia had made regular payments of $350 per month in restitution as required by the Settlement Agreement until Neldia's incarceration. Ms. Rogers also testified that she sold ProMark's assets and ProMark is no longer in business.

¶13 Neldia testified that her current sole source of income is $1,800 per month in Social Security retirement benefits—having transitioned from receiving disability benefits when she turned 65. She has no retirement or other savings account. She testified to being 69 years old and having health problems including anxiety, depression, lupus, and heel spurs. She related a history of a suicide attempt and that she still fights with suicidal ideation. She

outlined she spends her retirement benefits on her monthly expenses which include: $200-$250 in utilities; $148 in Medicare insurance; $250-300 for a loan on her septic system (with an interest rate of 35% due to her poor credit history and inability to borrow other funds); $300 in groceries; $140 for trash; $28 for her cell phone; $50-$100 per month in restitution; and $500 for her vehicle (which she purchased to replace her prior non-functional vehicle) which she intends to keep the remainder of her life. She testified that her husband is a disabled veteran. She and her husband own a home they purchased twenty years prior but there was no equity in the home as they had refinanced several times. Her husband pays most all of the mortgage and property taxes. She related their home had gone into foreclosure during the last year, but they had been able to make a payment agreement with the lender to keep the home. She testified she has historically made restitution payments as she was financially able to do. She believed that once her septic system loan was paid in six to eight months, she would have more money available to pay restitution but currently and in the past has financially been unable to pay more in restitution than she has paid. She testified that as per the civil Settlement Agreement, the total value of property she agreed to transfer and did transfer to ProMark was $35,792 and that she was current on the $350 monthly payments up to the date she went to prison. She related that at sentencing the court did not take into account any of the transfer of personal property or payments she had made when it imposed restitution. After her original sentencing, she attempted to get credit for such through the DOC who originally advised her to send them information and they would take care of it. She provided them the

9

information as to the personal property transfer and payments made, but they then responded there was nothing they could do. She attempted to appeal but her appeal was denied as untimely. She then sought help from the public defender's office but as she had no active case, she was declined assistance. When she obtained current counsel after the revocation petition was filed against her, counsel filed the motion seeking to modify or waive her remaining restitution obligation.

¶14 At the conclusion of Neldia's testimony, the District Court determined Neldia had violated the terms and conditions of her suspended sentence as she had not "completely paid restitution." The court further proclaimed:

> The [c]ourt finds that by the Defendant's own admission she has the ability to make at least some payments. She testified that her budget includes the payments that she has been making per month, and that she has the ability to continue to make those payments and anticipates being able to make additional payments or payments of an additional value in the future, but at the present, her testimony is that she can make at least the payments that she has been making.

After this pronouncement Neldia's counsel pointed out to the court its obligation to make a finding as to whether Neldia had made a good faith effort to make payments on her restitution prior to revoking the suspended portion of her sentence. Counsel also expressed confusion as to what the court was intending to do with Neldia's pending motion to modify or waive restitution. The court responded,

> Well, I intended to deal with that at the disposition. Frankly, I find it a bit too late. I mean, at this particular point in time to ask the [c]ourt to modify the restitution amount that was set forth in a Judgment that was imposed back in, what, 2012, yeah, I'm not inclined to do that. I do understand the argument that your client is making that she has done her best, basically made

10

a good faith effort. So I will, again, deal with those issues, but it sounds like we can deal with this all on a law and motion setting.

¶15 After a brief initial dispositional hearing on June 1, 2022, the District Court requested the parties brief the issue of street time credit. In its June 9, 2022 memorandum regarding street time credit, the State acknowledged Neldia had already paid $23,059.42 in restitution[1] and argued the testimony of Probation Officer Martin and Neldia's payment history to DOC provided substantial evidence Neldia had not made a good faith effort to pay restitution. The State faulted Neldia for prioritizing other payments, such as her vehicle payment, over restitution payments and relied on *State v. Johnson*, 2018 MT 277, 393 Mont. 320, 430 P.3d 494, in support of its arguments.

¶16 In her June 10, 2022 Brief in Support of Street Time Credit, Neldia asserted she should receive full credit for five years of street time toward any re-imposition of sentence. Citing §§ 46-18-247(2) and 46-18-203(6)(b), MCA (2017) and *State v. Corriher*, 2021 MT 275, ¶ 10, 406 Mont. 120, 497 P.3d 579, Neldia asserted the court may not revoke a suspended sentence for failing to pay restitution if the default is not attributable to a lack of good faith effort to obtain and pay the restitution. Pursuant to § 46-18-203(6)(b), MCA, "when a failure to pay restitution is the basis for the [revocation] petition, the offender may excuse the violation by showing sufficient evidence that the failure to pay restitution was not attributable to a failure on the offender's part to make a good faith effort to obtain

---

[1] Despite this acknowledgement and despite the court-ordered condition that required her to perform the terms of the civil Settlement Agreement, DOC has never credited Neldia for the personal property items and monthly cash payments she made to ProMark prior to sentencing. As such, the District Court was mistakenly led to believe Neldia continued to owe nearly $66,000 in restitution.

11

sufficient means to make the restitution payments as ordered." Neldia noted the State's acknowledgment she had paid $23,059.42 in restitution, which did not include the $9,100 she made in monthly payments prior to her incarceration nor the transfer of personal property made pursuant to the civil Settlement Agreement. Neldia again asserted her alleged failure to pay restitution in full was a single compliance violation, requiring intervention under the MIIG before revocation of her suspended sentence pursuant to § 46-18-203(8), MCA, and also asserting entitlement to street time credit pursuant to § 46-18-203(7)(b), MCA. Neldia argued that P & P did not provide her any assistance or guidance about the monthly restitution amount it was seeking nor inquire into her budget or ability to pay and that it was clear from their actions P & P believed her to be in compliance with the restitution order by allowing and accepting the monthly payments she made without intervention.

¶17 The District Court reconvened the dispositional hearing on June 29, 2022. At the outset of the hearing, Neldia's counsel advised the court she believed the violation to be a compliance violation such that Neldia was entitled to credit for street time and also that since ProMark had been dissolved, there was no longer a victim and there was no order amending the judgment requiring payment to an individual. The court then agreed with defense counsel stating, "I think this is a compliance violation." The court went on to find that Neldia had "the ability to make the same and greater restitution payments that she has been making in the past, by her own admission[.]" The court then iterated, "the [c]ourt will revoke the suspended sentence and continue the suspended sentence without change

12

under 46-18-203(7)(a)(1)(i)." When defense counsel questioned as to whether the court was giving credit for street time, the court responded, "I have recognized that it's a compliance violation and I have continued the sentence without change, and I think that's the extent of what I need to do." This prompted the prosecutor to inquire as to whether the court was reimposing a five-year sentence to begin anew or continuing her on the probationary sentence she was serving, which the prosecutor noted would now have expired as of May 13. The prosecutor advised the court she believed under § 46-18-203(7), MCA—which deals with non-compliance violations—the court could essentially re-begin another five-year suspended sentence. Defense counsel reiterated she believed the violation to be a compliance violation to which the court again agreed, "[s]o I have found that it's a compliance violation. I think that's pretty clear." To which, defense counsel again asserted the court must consider her entitlement to street time credit. The prosecutor then brought up the possibility of transferring the criminal restitution to a civil judgment which the court asserted would be simpler. Ultimately, the dispositional hearing was continued to permit the parties to confer to determine if they desired to go the civil route or make their arguments as to street time credit.

¶18 On July 20, 2022, the court reconvened the dispositional hearing. The court noted briefing had been filed by both parties. The court did not invite either party to speak further and, contrary to its prior holding, proclaimed, "[t]he violation of failing to pay restitution is not a compliance violation. I find that the Defendant is not entitled to street-time credit." The court then iterated if Neldia was entitled to street time credit, she would basically not

13

have to pay the entire restitution ordered. As such, citing § 46-18-203(7)(a)(iii), MCA, the court revoked her suspended sentence and committed her to the DOC for five years, all suspended, with "the same conditions and restitution requirements as was in the original Judgment with no credit for street time." Neldia appeals.

## STANDARD OF REVIEW

¶19 We review a district court's decision to revoke a suspended sentence to determine whether the court abused its discretion. *State v. Jardee*, 2020 MT 81, ¶ 5, 399 Mont. 459, 461 P.3d 108. Revocation decisions involve both legal and factual findings, and we review a district court's legal findings de novo and its factual findings for clear error. *Jardee*, ¶ 5. "A district court's factual findings are clearly erroneous if they are not supported by substantial credible evidence, if the court misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite firm conviction that a mistake has been made." *Johnson*, ¶ 10. "Finally, 'the interpretation and construction of a statute is a matter of law and we review whether the district court interpreted and applied a statute correctly de novo.'" *Jardee*, ¶ 5 (quoting *State v. Triplett*, 2008 MT 360, ¶ 13, 346 Mont. 383, 195 P.3d 819).

## DISCUSSION

¶20 *Whether the District Court abused its discretion when it revoked Appellant's suspended sentence based on her alleged failure to pay full restitution.*

¶21 Neldia asserts the State presented insufficient evidence to carry its burden of proof that Neldia violated the restitution condition of her suspended sentence which required she pay restitution "in a timely manner" rather than setting forth a specific payment in full

14

deadline. Neldia further asserts, as provided in § 46-18-203(6)(b), MCA, that even if the restitution condition could be interpreted to require full restitution payment before sentence discharge, Neldia excused the violation by showing her failure was not attributable to a failure on her part to make a good faith effort to make the restitution as ordered.

¶22 The State contrarily asserts a single violation is sufficient to support revocation, citing § 46-18-247(1), MCA, and asserting "[a] failure to pay restitution as ordered by the district court is sufficient grounds to revoke an offender's sentence." The State also asserts the Judgment required Neldia to perform the terms of the civil Settlement Agreement which she did not do, thus warranting her revocation. Finally, the State relies on *Johnson* as supporting revocation of Neldia's suspended sentence and re-imposition of a new suspended sentence.

¶23 Condition 2. (n) of the June 21, 2012 Judgment and Commitment required Neldia to pay restitution in a timely manner. It also required Neldia's supervising officer to "determine the amount of payments" and that she "will continue to make monthly restitution payments until he/she has paid full restitution, even after incarceration or supervision has ended[.]" Condition 2. (mm) also required her to perform the terms of the civil Settlement Agreement.

¶24 Pursuant to § 46-18-247, MCA, if an offender is in default of restitution, the court may require the offender to appear and show cause why the offender should not be confined for failure to obey the sentence. Pursuant to § 46-18-203(6)(b), MCA, when failure to pay restitution is the basis for the revocation petition, "the offender may excuse the violation

15

by showing sufficient evidence that the failure to pay restitution was not attributable to a failure on the offender's part to make a good faith effort to obtain sufficient means to make the restitution payments as ordered."

¶25 When seeking revocation of a suspended sentence, different outcomes are provided statutorily depending on whether the offender's violation is a *noncompliance* violation or a *compliance* violation. Pursuant to § 46-18-203(7), MCA, if the court finds the offender has violated the terms and conditions of a suspended sentence and that the violation is a *noncompliance* violation, the court may revoke the suspended sentence and impose any new sentence that does not include a longer imprisonment or commitment term than the original sentence. Under this instance, if a suspended sentence is revoked, "the judge shall consider any elapsed time, consult the records and recollections of the probation and parole officer, and allow all the elapsed time served without any record or recollection of violations as a credit against the sentence." Section 46-18-203(7)(b), MCA.

¶26 Pursuant to § 46-18-203(8), MCA, if the court finds the offender has violated the terms and conditions of a suspended sentence and that the violation is a *compliance* violation, the court is then required to determine whether the appropriate violation responses under the incentives and interventions grid have been "exhausted and documented in the offender's file" and, if not, "notify the [DOC] and refer the matter back to the hearings officer." Section 46-18-203(8)(c), MCA, provides a court may sentence an offender for a compliance violation as if it were a noncompliance violation under § 46-18-203(7), MCA, if the court determines "the offender's conduct indicates that the offender

16

will not be responsive to further efforts under the incentives and interventions grid[.]" The MIIG in place at the time the petition for revocation was filed against Neldia provided for graduated interventions in response to an offender's "[f]ailure to pay restitution, when ability to pay is demonstrated." Montana Incentives/Intervention Grid for Adult Probation & Parole, Department of Corrections Probation & Parole Division Operational Procedure, Procedure No. PPD 6.3 101(A) (DOC June 17, 2019).

¶27 We recognize Neldia's chance for successful payment of the full restitution ordered was diminished at the time Neldia was originally sentenced when the court anticipated that, despite Neldia's over 2-year history of successfully making restitution payments pursuant to the civil Settlement Agreement, she would stop making restitution payments if given a fully suspended sentence. Thus, in response to this anticipatory breach, the court rejected a fully suspended sentence—which would have provided Neldia ten years of supervised time to pay the restitution and would not have resulted in suspension of her disability benefits—and instead imposed five years of unsuspended prison time, followed by five years of suspended time. Neldia's incarceration resulted in her disability income being suspended while she was incarcerated which snowballed into financial instability for her household as her husband's income alone was insufficient to meet their mortgage, property tax, and other household expenses.

¶28 Upon release, Neldia's supervising officer did not specifically determine the amount of Neldia's restitution payments, did not consult with her about her finances, and other than discuss that he did not expect she would pay off the restitution prior to expiration of her

sentence, and did not advise her of his expectations related to restitution. Throughout her entire probationary period, Neldia's supervising officer did not assist her in budgeting or decision-making regarding her finances, did not advise or notify her that he considered her in default of her restitution or in violation of her probation, and did not counsel her that he intended to seek revocation of her suspended sentence should she not make full restitution by the time her sentence was set to expire. In fact, the only discussion they did have about her payment of restitution was that he did not expect she could pay it in full before her sentence expired. Neldia was led to believe she was satisfactorily meeting the requirements of her probation.

¶29 Upon proceeding to a revocation hearing, it was incumbent on the District Court to first determine whether the alleged violation was a compliance or non-compliance violation. In making this determination the District Court twice determined that Neldia's violation was a compliance violation—declaring "I think this is a compliance violation" and again reiterating, "I have found that it's a compliance violation. I think that's pretty clear"—and then contrarily determined it was not a compliance violation—"[t]he violation of failing to pay restitution is not a compliance violation." Neldia's supervising officer in his affidavit clearly indicated the alleged violation to be a compliance violation. As previously noted, the MIIG contemplates failure to pay court-ordered financial obligations, including restitution when ability to pay is demonstrated, as a compliance violation subject to graduated interventions as provided in the MIIG. Montana Incentives/Intervention Grid for Adult Probation & Parole, Department of Corrections Probation & Parole Division

Operational Procedure, Procedure No. PPD 6.3 101(A) (DOC June 17, 2019). There was no evidence presented, or really any allegation, that the alleged violation was anything other than a compliance violation.[2] Thus, the District Court's determination that it was a noncompliance violation is not supported and was error.

¶30    As the asserted violation was a compliance violation, the options available to the court upon revocation are provided for in § 46-18-203(8), MCA. Under § 46-18-203(8)(a), MCA, when the violation is a compliance violation, the court must determine whether the appropriate violation responses under the MIIG have been exhausted and documented in the offender's file and, if not, notify DOC and refer the matter back to the hearings officer. If, however, the court determines that based on the offender's conduct, the offender will not be responsive to further efforts under the MIIG, the judge may sentence the offender as if the violation was a noncompliance violation under § 46-18-203(7), MCA. Under this option, the court must then give the offender credit for all of the elapsed time served

_____

[2] PPD 6.3.101 Montana Incentives/Interventions Grid for Probation and Parole, DOC Probation and Parole Operational Procedures, defines a "Non-Compliance Violation" as:

   A violation of the conditions of supervision that is:
      • a new criminal offense;
         - as interpreted by the Department's Legal Office and for the purposes of this procedure, an initial appearance and court advisement for a new criminal offense is sufficient evidence of a violation of the conditions of supervision;
         - an interstate offender must be convicted of the new crime.
      • possession of a firearm in violation of a condition of supervision;
      • behavior by the offender or any person acting at the offender's direction that could be considered stalking, harassing, or threatening the victim of the offense or a member of the victim's immediate family or support network;
      • absconding; or
      • failure to enroll in or complete a required sex offender treatment program or a treatment program designed to treat violent offenders.

19

without any recollection or record of violations as a credit against the sentence. Section 46-18-203(7)(b), MCA. The court must also determine whether the violation should be excused as the offender made a sufficient good faith effort to pay the restitution—"that the failure to pay the restitution was not attributable to a failure on the offender's part to make a good faith effort to obtain sufficient means to make the restitution payments as ordered." Section 46-18-203(6)(b), MCA. The State asserts *Johnson* is controlling in this regard.

¶31 In 2008, Johnson was charged with five counts of felony theft, three counts of felony exploitation of an older person, two misdemeanor counts of theft and one misdemeanor count of exploitation of an older person. The State alleged Johnson defrauded elderly clients while selling insurance and annuities. Johnson pled guilty to two felony counts of theft and his sentence was deferred for a period of six years on various conditions, including that he pay $87,339.50 in restitution. Shortly before his deferral period was set to expire, the State brought a revocation action asserting Johnson failed to make a good faith effort to pay restitution. At the time of the petition for revocation, Johnson had paid a total of $3,799 (4.3%) of the restitution ordered and had not made a restitution payment in seven months. *Johnson*, ¶¶ 3-5. At the revocation hearing, three supervising officers testified that Johnson's lack of effort and interest in working lower paying jobs kept him from steady employment. He worked a total of only 14-16 months across three different jobs during the nearly 6-year deferral period. He quit jobs and was fired from others. He failed to inform DOC of all his sources of income including inheritance and commissions from prior sales. He also made payments of $100 per month toward his daughter's student loan,

20

although he acknowledged she had the ability to make the payments herself. All three supervising officers testified Johnson had not made a good faith effort to pay the restitution ordered. *Johnson*, ¶ 6.

¶32 Given the very divergent facts here to those in *Johnson*, we do not find *Johnson* to be controlling. Johnson, unlike Neldia, had a college education, was not disabled, had undisclosed sources of income, and throughout his deferral period made payments on his daughter's student loan when she had the financial ability to make the payments. One of his supervising officers testified she felt like she worked harder than Johnson did to keep him on track. Johnson failed to make any restitution payment in the seven months prior to filing the revocation petition. *See Johnson*, ¶¶ 5-8. Here, Neldia fully disclosed her sole source of income—Social Security disability transitioning to Social Security retirement at age 65—and no evidence was presented that she had the ability to work or receive additional income. She received no inheritance. She disclosed all of her income. She did not make installment payments on a family member's debts. Her supervising officer did not testify that she lacked effort and interest in working but instead recognized she had health problems. Her supervising officer did not testify Neldia did not make a good faith effort to pay her restitution, but instead testified that had she not made restitution efforts, he would not have characterized her performance on supervision as exemplary. During her suspended period, Neldia made consistent restitution payments, had no significant break in payments, and there is no evidence she paid anyone else's expenses. Finally,

*Johnson* predated the statutory requirement to develop and implement the MIIG such that imposition of graduated interventions was not required at the time of *Johnson*.

¶33 At the adjudication and initial disposition hearings, the District Court seemed to accept that Neldia had made good faith efforts to pay restitution noting she had made restitution payments consistent with her financial ability to do so and noting she would continue to have the ability to continue to make the same and, after payment of the loan for her septic system, make greater restitution payments. Despite this, at the final dispositional hearing, without explanation, the District Court pronounced Neldia did not make a good faith effort to pay restitution.

¶34 From our review of the record, at hearing the State did present evidence that Neldia did not pay her restitution in full as ordered, but presented no evidence Neldia had the financial ability to pay the restitution in full or that she did not make a good faith effort to pay restitution throughout her probationary period. Neldia provided uncontested evidence of her dire financial situation which was made worse by her initial incarceration. Although the State took issue with some of Neldia's financial choices—such as her purchase of a vehicle with a monthly payment of $500—it did not present evidence as to what a reasonable monthly vehicle expense would be for an individual with poor credit and it did not present evidence to overcome Neldia's uncontested evidence that her failure to make full restitution was not based on a lack of good faith effort to do so, but rather on her financial inability to pay. Neldia's supervising officer was aware of her restitution obligation and discussed with her he did not believe she would be able to pay the restitution

in full before her sentence expired. Her supervising officer testified Neldia was an exemplary probationer and had she not made regular restitution payments, he would not have characterized her as such. He further testified it was his job to require her to make regular payments to her ability and at no time prior to filing his report of violation had he addressed with her any deficiency he perceived in her making good faith payment of her restitution.

¶35 It is incumbent on a supervising officer to work with an offender and to make sure the offender is apprised of any violations perceived or asserted by the supervising officer so the offender can take steps to address the deficiency. This is the very purpose of the MIIG. It is inappropriate, when restitution is at issue, to accept an offender's regular restitution payments and then wait until the offender is years into a suspended sentence and when the offender is nearly ready to discharge the sentence file a petition for revocation asserting ongoing violations dating back years for failure to make full restitution. Pursuant to the MIIG, P & P has an obligation to monitor offenders it supervises to determine their financial ability to meet court-ordered financial obligations, including restitution, and address, through graduated interventions, their failures in this regard prior to seeking revocation.

¶36 The District Court's factual findings that the violation was a noncompliance violation and that Neldia did not make a good faith effort to pay restitution are clearly erroneous as they are not supported by substantial credible evidence, they misapprehend the effect of the evidence, and upon our review of the record, leave this Court with the

definite firm conviction that a mistake has been made. The evidence of record overwhelmingly supports characterization of the violation as a compliance violation which should have been excused pursuant to § 46-18-203(6)(b), MCA. We thus conclude, on the record before us, the District Court abused its discretion when it revoked Neldia's suspended sentence based on her failure to pay full restitution.

¶37 As we reverse the court's revocation of Neldia's suspended sentence, it is not necessary to address whether the court erred in denying Neldia's motion seeking to modify or waive restitution, whether the court erred when it denied Neldia credit for elapsed street time, or the legal propriety of providing restitution to an entity that no longer exists.

## CONCLUSION

¶38 We reverse and remand to the District Court to vacate the August 25, 2022 Judgment on Revocation of Suspended Sentence and dismiss the petition for revocation.

/S/ INGRID GUSTAFSON

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JIM RICE

24