FILED

08/27/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0614

DA 21-0614

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 184

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

CHRISTOPHER I TOULOUSE,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC-2020-189
Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Mark S. Hilario, Attorney at Law, Billings, Montana

      For Appellee:

      Austin Knudsen, Montana Attorney General, Brad Fjeldheim, Assistant
Attorney General, Helena, Montana

      Matthew C. Jennings, Missoula County Attorney, Brian C. Lowney, Deputy
County Attorney, Missoula, Montana

Submitted on Briefs: August 6, 2024

Decided: August 27, 2024

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Defendant and Appellant Christopher I. Toulouse (Toulouse) appeals from the October 10, 2021 Judgment issued by the Fourth Judicial District Court, Missoula County.

¶2 We address the following restated issue on appeal:

*Whether the District Court issued an illegal sentence upon revocation.*

¶3 We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 In April 2020, Toulouse was charged with misdemeanor partner or family member assault (PFMA), felony intimidation, felony stalking, and misdemeanor violation of a no contact order stemming from a series of harassing incidents directed towards his ex-girlfriend, L.J., with whom he has two children. In August 2020, pursuant to a plea agreement, Toulouse pled guilty to the PFMA, intimidation, and stalking charges, and the State dismissed the violation of a no contact charge. The plea agreement called for Toulouse to receive a 1-year sentence at the Missoula County Detention Facility (MCDF) with all but 24 hours suspended for PFMA; a 10-year sentence to the Montana Department of Corrections (DOC), with 5 years suspended on the intimidation charge; and a 5-year DOC sentence for stalking, to be served concurrently with the intimidation sentence. The District Court held a sentencing hearing on October 1, 2020. At that hearing, the court informed the parties that it would not follow the plea agreement and intended to impose the stalking sentence consecutively to the intimidation sentence. The court allowed Toulouse to withdraw his guilty pleas at that time and set a hearing to schedule a trial.

¶5     The District Court held another hearing on October 15, 2020.  At this hearing, Toulouse again pled guilty to the PFMA, intimidation, and stalking charges.  The court sentenced Toulouse to 1 year at the MCDF with all but 24 hours suspended for PFMA; to a 10-year commitment to DOC with 5 years suspended for intimidation; and to a 5-year suspended DOC commitment for stalking, to be served consecutively to the intimidation sentence.  Toulouse received credit for 181 days served and was remanded to DOC custody for placement.  The District Court's written "Zero Tolerance Judgment" followed on November 5, 2020.  A condition of this judgment granted L.J. an order of protection for 75 years, that also applies to the parties' children until they reach the age of 18, and allowed Toulouse telephonic contact with the children.

¶6     On April 2, 2021, the State filed a Petition to Revoke.  The State's petition asserted Toulouse was in violation of his probation due to new criminal charges—two counts of felony stalking, one count of misdemeanor violation of an order of protection, and six counts of felony violation of an order of protection—being filed against him in Cause No. DC-21-190 stemming from Toulouse, while at a prerelease center, commenting on photos in a Google account he shared with L.J.  The petition requested Toulouse be brought before the District Court "for revocation of probation and imposition of sentence."  Toulouse filed an Entry of Admissions & Waiver of Rights on August 31, 2021, admitting to two of the petition's asserted violations—one misdemeanor violation of an order of protection and one felony violation of an order of protection.  According to the District Court's Minute Entry, as no transcript of this hearing was filed on appeal, the court held a hearing on

3

September 2, 2021, where Toulouse admitted to those two violations in exchange for the charges in DC-21-190 being dismissed. The District Court then held a dispositional hearing on September 30, 2021. At that time, the State recommended the court revoke Toulouse's sentences and commit him to the Montana State Prison (MSP) for a total of 15 years. Counsel for Toulouse recommended the court "continue his sentence without additional time, in a secure facility" as allowed by § 46-18-203(7)(a)(ii)(A), MCA, because it would likely be several months before Toulouse could be readmitted to a prerelease center. The District Court revoked its prior judgment and sentenced Toulouse to a ten-year commitment to MSP, with no time suspended, for the intimidation charge and to a consecutive five-year commitment to MSP, with no time suspended, for the stalking charge. The State thereafter dismissed DC-21-190. The District Court's written Judgment, reflecting the total 15-year commitment to MSP with time served credit in the amount of 531 days, followed on October 12, 2021.

¶7 Toulouse appeals. Additional facts will be discussed as necessary below.

## STANDARD OF REVIEW

¶8 We review criminal sentences for legality. *State v. Souther*, 2022 MT 203, ¶ 6, 410 Mont. 330, 519 P.3d 1 (citing *State v. Seals*, 2007 MT 71, ¶ 7, 336 Mont. 416, 156 P.3d 15). The interpretation and construction of a statute is a matter of law, and we review whether the district court interpreted and applied a statute correctly de novo. *Souther*, ¶ 6 (citing *State v. Jardee*, 2020 MT 81, ¶ 5, 399 Mont. 459, 461 P.3d 108).

4

**DISCUSSION**

¶9    *Whether the District Court issued an illegal sentence upon revocation.*

¶10    Toulouse asserts the sentence upon revocation contains a longer imprisonment time than his original sentence and is therefore illegal.  The State contends the District Court did not exceed its sentencing authority when it sentenced Toulouse to a cumulative 15-year MSP commitment upon revocation.

¶11    "Revocation proceedings are civil matters and fundamentally differ from underlying criminal conviction statutes."  *Souther*, ¶ 9 (collecting cases).  Accordingly, once a district court revokes a suspended sentence, its sentencing power "is 'particularly and expressly' governed by § 46-18-203, MCA."  *Souther*, ¶ 10 (quoting *State v. Osborn*, 2015 MT 48, ¶ 13, 378 Mont. 244, 343 P.3d 1188).  Section 46-18-203, MCA, "defines the district court's options in a revocation proceeding."  *State v. Roberts*, 2010 MT 110, ¶ 12, 356 Mont. 290, 233 P.3d 324.  "A district court only has the authority to impose a sentence based on the authority granted by the applicable statute.  Any sentence that exceeds such authority is illegal and facially invalid."  *State v. Southwick*, 2007 MT 257, ¶ 26, 339 Mont. 281, 169 P.3d 698 (citations omitted).

¶12    On appeal, Toulouse has not challenged the propriety or legality of the underlying revocation of his sentence, only the sentence imposed by the District Court upon revocation.  When sentencing an offender for violating the terms and conditions of a suspended or deferred sentence under § 46-18-203, MCA, a district court is presented with different options depending on whether the violation is a compliance violation or a

5

noncompliance violation. *State v. Puccinelli*, 2024 MT 114, ¶ 25, 416 Mont. 444, 549 P.3d 441. In the proceedings below, Toulouse entered admissions to two noncompliance violations. When sentencing an offender for a noncompliance violation, a district court's sentencing authority is expressly delineated by statute:

> If the judge finds that the offender has violated the terms and conditions of the suspended or deferred sentence and the violation is not a compliance violation, the judge may:
>
>     (i) continue the suspended or deferred sentence without a change in conditions;
>
>     (ii) continue the suspended sentence with modified or additional terms and conditions, which may include placement in:
>
>         (A) a secure facility designated by the department for up to 9 months; or
>
>         (B) a community corrections facility or program designated by the department for up to 9 months, including but not limited to placement in a prerelease center, sanction or hold bed, transitional living program, enhanced supervision program, relapse intervention bed, chemical dependency treatment, or 24/7 sobriety program;
>
>     (iii) revoke the suspension of sentence and require the offender to serve either the sentence imposed or any sentence that could have been imposed that does not include a longer imprisonment or commitment term than the original sentence; or
>
>     (iv) if the sentence was deferred, impose any sentence that might have been originally imposed.

Section 46-18-203(7)(a), MCA. The dispute in this case centers on the District Court's authority under § 46-18-203(7)(a)(iii), MCA, to "revoke the suspension of sentence and require the offender to serve either the sentence imposed or any sentence that could have

6

been imposed that does not include a longer imprisonment or commitment term than the original sentence" and whether the sentence actually imposed on Toulouse in this case violates the statute by imposing a longer imprisonment term than the original sentence.

¶13 Toulouse correctly notes that an MSP sentence is a more "burdensome sentence" than a DOC commitment of the same term. *State v. Jackson*, 2007 MT 186, ¶ 15, 338 Mont. 344, 165 P.3d 321. Beyond that observation, Toulouse's brief provides little useful analysis for our consideration, as *Jackson*, which does not address sentencing upon revocation, is the only case cited in the argument section of his opening brief and he did not file a reply brief. Our analysis does not end where Toulouse's does, however, because "we conduct de novo review to determine whether the District Court had authority to sentence" Toulouse in this case. *State v. Ellsworth*, 2023 MT 8, ¶ 12, 411 Mont. 213, 523 P.3d 527 (citing *State v. Tippets*, 2022 MT 81, ¶ 9, 408 Mont. 249, 509 P.3d 1).

¶14 This matter comes to us following a petition for the revocation of Toulouse's suspended sentences. Toulouse's original sentence was a 10-year DOC commitment, with 5 years suspended, for intimidation and a consecutive 5-year suspended DOC commitment for stalking—for a total 15-year DOC commitment, with 10 years suspended. When Toulouse got new charges and the State filed a petition to revoke, he was within the 5-year "active" custodial portion of his intimidation sentence and had not yet discharged onto the suspended portion of his sentence(s). Pursuant to statute, the "petition for a revocation must be filed with the sentencing court either before the period of suspension or deferral has begun or during the period of suspension or deferral but not after the period has

7

expired." Section 46-18-203(2), MCA. Because Toulouse was still serving his 5-year "active" custodial sentence while at prerelease, the State's petition for revocation was filed "before the period of suspension" began and the statute "allows for a suspended sentence to be revoked for violations of the conditions of suspension before the period of suspension has begun." *State v. Graves*, 2015 MT 262, ¶ 15, 381 Mont. 37, 355 P.3d 769. When resentencing an offender for a noncompliance violation, the court, among other dispositional options, may "*revoke the suspension of sentence* and require the offender to serve either the sentence imposed or any sentence that could have been imposed that does not include a longer imprisonment or commitment term than the original sentence." Section 46-18-203(7)(a)(iii), MCA (emphasis added). The "period of suspension" on Toulouse's intimidation sentence was five years, while the District Court's sentence upon the revocation of Toulouse's suspended sentence was a 10-year commitment to MSP. While a commitment to MSP is a sentence which "could have been imposed" by the District Court when it originally sentenced Toulouse, a 10-year commitment when revoking a 5-year suspended sentence is a "longer term of imprisonment" and therefore a violation of the District Court's sentencing authority. "[R]evocation of a suspended sentence based upon violations of probationary conditions and reinstatement of the original sentence does not violate a person's constitutional rights against double jeopardy, although *a court is limited to the parameters of the sentence imposed in the initial suspended sentence* and credit must be allowed for time already served in a detention center. For example, if a defendant is given a 20-year suspended sentence and subsequently violates

8

the terms of his probation, the court may only impose a maximum of 20 years as a consequence of the probation violation." *State v. Dewitt*, 2006 MT 302, ¶ 10, 334 Mont. 474, 149 P.3d 549 (internal citations omitted; emphasis added). "When interpreting a statute, this Court will not look beyond its plain language if the language is clear and unambiguous." *Jardee*, ¶ 8 (citing *Mont. Sports Shooting Ass'n v. State*, 2008 MT 190, ¶ 11, 344 Mont. 1, 185 P.3d 1003). The statutory language here is clear and unambiguous in that it allows for a court to "revoke the suspension of sentence," § 46-18-203(7)(a)(iii), MCA, but provides no mechanism for a court to revoke an "active" custodial sentence upon petition by the State. The Dissent's assertion the "original term" of Toulouse's suspended sentence includes the 5-year custodial portion, rather than only the 5-year suspended portion, would allow the State to revoke an active custodial sentence even though such a revocation is not provided for by statute. The "original sentence" at issue here, in a case where the State seeks to revoke Toulouse's suspended sentence is the suspended sentence itself and the District Court, in revoking the suspended sentence, "is limited to the parameters of the sentence imposed in the initial suspended sentence[.]" *Dewitt*, ¶ 10. As such, the District Court's sentence upon revocation which imposed a longer term of imprisonment than Toulouse's original suspended sentence "resulted in the imposition of an illegal sentence in violation of § 46-18-203(7)(a)(iii), MCA." *State v. Youpee*, 2018 MT 102, ¶ 6, 391 Mont. 246, 416 P.3d 1050. As the District Court's revocation authority is limited to revocation of suspended time, the sentence upon revocation revoking custodial time must be vacated and remanded for further proceedings in accordance with this

9

Opinion.[1]  The revocation sentence shall begin to run upon discharge of his custodial time and he should be given credit at the time of his sentencing for any time he has served beyond expiration of the custodial time.

## CONCLUSION

¶15    The District Court issued an illegal sentence upon revocation by imposing a longer imprisonment term than contained in the original suspended sentence.

¶16    Reversed and remanded.


/S/ INGRID GUSTAFSON

We concur:

/S/ MIKE McGRATH
/S/ DIRK M. SANDEFUR
/S/ LAURIE McKINNON

---

[1] While the District Court, through credit for time served granted in the revocation judgment, appeared to fashion a sentence which would likely end on the same date as the originally imposed sentence, it nonetheless imposed an illegal sentence upon revocation because the proceeding "is 'particularly and expressly' governed by § 46-18-203, MCA." *Souther*, ¶ 10 (quoting *Osborn*, ¶ 13).  The State petitioned the District Court for "revocation of probation," and, as the State noted at the sentencing hearing, Toulouse's noncompliance violations gave the court "the ability to sentence *up to the entirety of the suspended sentence*" pursuant to § 46-18-203(7), MCA. (Emphasis added.)  As previously noted, Toulouse was serving an active custodial sentence and had not yet discharged to probation or started serving his 5-year suspended sentence for Count II (or the consecutively imposed 5-year suspended sentence for Count III) at the time the State moved to revoke in this case.  Because the proceeding was particularly and expressly governed by § 46-18-203, MCA, the court was statutorily limited to imposing a revocation sentence no longer than the originally imposed suspended sentence.

Justice Jim Rice, dissenting.

¶17     I disagree with the Court's interpretation of § 46-18-203(7)(a), MCA, the revocation sentencing statute. The Court's interpretation will require more than one judgment, and in some cases multiple judgments, to establish and govern the effective current sentence of a defendant with a revoked sentence.

¶18     I agree with the Court's initial point that a revocation applies to the suspended portion of a sentence, which here is the second 5 years of Toulouse's original 10-year intimidation sentence. After the District Court revoked that portion of the sentence, it combined this newly revoked time of 5 years with the originally imposed 5-year unsuspended (custodial) portion of the sentence to impose a 10-year sentence, and, as provided by statute, granted credit for the time Toulouse served on the custodial sentence. That resulted in the total term of the new sentence to be the same term as the original sentence, even ending on the same day: under the original 10-year intimidation sentence imposed on October 15, 2020, Toulouse received credit for time served of 190 days; then, when the District Court imposed the revocation sentence on September 30, 2021, Toulouse received credit for time served of 531 days, resulting in an identical term with the same ending date.

¶19     However, the Court reverses the 10-year revocation sentence on the ground that the District Court unlawfully imposed "a longer term of imprisonment" because 10 years is longer than the 5-year revocation period, despite the original sentence being for a term of

11

10 years. Opinion, ¶ 14. I believe the Court misinterprets the statute by failing to account for all of its language, which states:

(7)(a)  If the judge finds that the offender has violated the terms and conditions of the suspended or deferred sentence by committing either compliance violations or noncompliance violations, or both, the judge may:

(iii)  revoke the suspension of sentence *and require* the offender to serve either the sentence imposed *or any sentence that could have been imposed* that does not include a longer imprisonment or commitment term than the original sentence;

Section 46-18-203(7)(a)(iii), MCA (emphasis added). The two parts of the original sentence—the custodial portion and the suspended portion—together make up the term of "the original sentence." The statute authorizes the District Court to revoke the suspended portion of the sentence "and require" the defendant to serve any sentence that could have been imposed that does not increase that term, thus permitting the revocation court in its discretion to fashion from these parts a new sentence—"*any sentence* that could have been imposed"—as long as the new sentence does not exceed the original term.

¶20    I believe this to be a necessary interpretation of the statute because "[r]evocation subjects the defendant to execution of the original sentence as though he had never been given a suspension of sentence." *State v. Cook*, 2012 MT 34, ¶ 16, 364 Mont. 161, 272 P.3d 50. We have stated that a revocation of a suspended sentence results in the original sentence being "replaced" by the new revocation sentence. *Wagner v. Kirkegard*, 2016 Mont. LEXIS 482, *6, 385 Mont. 538, 382 P.3d 864. I read the Court's instruction that Toulouse's new "revocation sentence shall begin to run upon discharge of his custodial time," Opinion, ¶ 14, as requiring the original judgment to remain in effect for purposes of

12

the originally-imposed custodial time, but the revocation sentence to simultaneously be effective for purposes of the time thereafter. This could lead to further judgments. For example, if Toulouse received a revocation sentence of 2 years in MSP and 3 years suspended time for the original 5-year suspended portion of his sentence, and then violated again, the State could file another petition to revoke, leading to a third sentencing judgment for the fractional time remaining, and so on. As a practical matter, this could create difficulties in ascertaining a defendant's currently effective sentence, but as a legal issue, I believe the statute prevents this problem by providing authority for the revocation court to construct a new judgment unifying the entirety of a revoked defendant's new sentence, which replaces the defendant's original judgment. That is what the District Court did here, and I believe it properly acted according to statutory authority.

¶21 Lastly, I would note the procedural and argument posture of this case. Toulouse did not raise the particular issue here reached by the Court in the District Court. He does raise on appeal the issue of whether his new sentence exceeded the parameters of revocation sentencing authority, and thus challenges the facial validity of his sentence for which review is permitted despite the lack of objection pursuant to the rule established in *State v. Lenihan*, 184 Mont. 338, 343, 602 P.2d 997 (1979) ("It appears to be the better rule to allow an appellate court to review any sentence imposed in a criminal case, if it is alleged that such sentence is illegal or exceeds statutory mandates, even if no objection is made at the time of sentencing."). The Court cites to *State v. Souther*, 2022 MT 203, 410 Mont. 330, 519 P.3d 1, for the standard that we review sentences for legality, and that case also

13

explains the *Lenihan* doctrine for appellate review of claimed illegal sentences. *See Souther*, ¶ 12. Toulouse's claim does not challenge a merely objectionable sentence, for which review would have been waived. *See State v. Kotwicki*, 2007 MT 17, ¶ 13, 335 Mont. 344, 151 P.3d 892 ("We consistently have held that a sentence is not illegal if it falls within statutory parameters. . . . We also have determined that a sentencing court's failure to abide by a statutory requirement rises to an objectionable sentence, not necessarily an illegal one that would invoke the *Lenihan* exception."). Pursuant to this authority, I agree that the Court properly reaches the merits of Toulouse's argument.

¶22 Unfortunately, however, there is some question about the scope of his merits argument. The primary thrust of Toulouse's briefing is that the District Court erred by imposing a prison sentence after revoking his original DOC commitment ("Does M.C.A. § 46-18-203(7), (a)(iii), MCA, prohibit a sentencing judge in a revocation proceeding from altering the original sentence from a Department of Correction confinement to a Montana State Prison confinement. . .?"). That is the argument the State responds to ("Toulouse's only argument is that the district court could not impose MSP sentences on revocation when the original sentences were DOC commitments."). If that were truly Toulouse's only argument, the State's response would correctly explain that this issue has been resolved statutorily, and that § 46-18-203(7)(a)(iii), MCA, now permits revocation courts to impose MSP sentences upon revocation of DOC sentences, as long as the new term of sentence does not exceed the original term. The statute was revised to resolve this issue by way of House Bill 222, entitled "An Act Allowing a Judge Who Revokes a Sentence Suspension

14

to Impose Any Sentence that Could Have Been Imposed That is Not Longer Than the Original Sentence. . . ." 2003 Mont. Laws ch. 386.

¶23 However, Toulouse's thin appellate argument also includes the issue of whether his revocation sentence improperly extended the *term* of his original sentence, and thus is raised by his briefing ("Appellant argues that in changing the confinement to MSP and with no suspension of time, he will be serving an additional four and a half years") and thus is properly reached by the Court.

¶24 I would affirm.

/S/ JIM RICE

Justices Beth Baker and James Jeremiah Shea join in the dissenting Opinion of Justice Rice.

/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA

15